# PATRICIA HUGHES V. THE HARTFORD

In the United States District Court
District of Connecticut

Civil Action File No.: 3:17-cv-01561-JAM

**AFFIDAVIT OF PATRICIA HUGHES**

Jeffrey S. Warncke, Esq.
Evans, Scholz, Williams & Warncke
3490 Piedmont Road, NE, Suite 1200
Atlanta, GA 30305-4810
P: 404.841.9400
F: 888.738.5949
jswarncke@esww-law.com



PLAINTIFF'S EXHIBIT "C"
Blumberg No. 5113

# AFFIDAVIT OF PLAINTIFF PATRICIA HUGHES

1. My name is Patricia Hughes. I am over the age of 18 and legally competent to give this affidavit. The facts recited herein are based on personal knowledge.
2. I am providing this affidavit at the request of my attorney, Jeffrey S. Warncke, in response to the Independent Medical Examination (IME) report prepared by Dr. Arthur Schiff, who examined me on May 11, 2017.
3. My disability insurance company directed me to attend an IME with Dr. Arthur Schiff on May 11, 2017. Also in attendance at the IME was my partner, Jeannie Johnson, who drove me to the scheduled session.
4. I brought with me to the appointment a packet of medical records that my attorney provided to me for the sole purpose of providing the most recent, current information and records to Dr. Schiff for his review. These same records and documents had recently been provided to The Hartford by my attorney with my appeal package. Unfortunately, Dr. Schiff refused to accept the proffered records and documents, and instead, as reflected by his IME report, relied upon outdated information which had been provided to him by the insurance company.
5. When I arrived at the appointment, it was a relatively good day for me – I had only a very mild headache, and was only occasionally off-balance. The nurse listed out my medications, and took a family history of certain illnesses. She also did a basic eye test utilizing the "eye chart." She asked me when my symptoms may occur, and I informed her they come on without warning and I told her a few of the triggers for the symptoms.
6. I then met with Dr. Schiff, who did a routine neurological examination. He informed me the exam looked with good with the exception of my walking with one foot in front of the other. He also told me I had great medical providers. He said he would be reporting from observation that I looked better than I felt. I then became uncomfortable with the exam when Dr. Schiff became rather hostile as I reported a pain in my back upon a light touch exam. He touched my back in such a way where I have a bulging disc in my mid- to upper-spine. As I pulled away from his touch, and was trying to explain the reaction to touch in that area, he quickly interrupted me as I am trying to explain the problem. He indicated that no bulging disc would elicit that type of pain – that it would be like trying to touch someone in the next room by pushing on the wall, and he reached out to push on the wall. I then just conceded and said well that I was not sure why, but I have reflexive withdrawal pain to touch for some reason in that area.
7. With this abrupt, rude behavior, I felt it was in my best interest to answer questions with as few words as possible. He then asked me to explain the Gentamicin treatment in my words. As I was explaining the procedure and my

symptoms, my explanation was again halted and interrupted by Dr. Schiff when he quickly stated, "so you had bad vertigo." At this time, I again conceded and just agreed (even though my explanation was not complete).

8. Because of this doctor's rude behavior and poor reaction, I was not comfortable in providing the rest of the information he requested concerning the Gentamicin treatment. This doctor was receptive initially until I informed him of the pain and the response in my back. After that, he appeared to be less interested in hearing my full response to the question he had asked about the Gentamicin treatment and how it affected me.

9. Dr. Schiff performed no audiogram during this IME, or any other testing, other than the most rudimentary neurological test and eye exam.

10. Dr. Schiff appears to have been influenced by the surveillance video, as the video was the most widely cited document in his written review. If he had been provided the updated, current records which had been sent by my attorney to The Hartford with my appeal documents, and/or accepted the package of records I offered upon my arrival to the appointment, he would have seen that Dr. Gaye Cronin recommends that I partake in some activities as I am able to do so. Dr. Cronin and my healthcare providers, as recognized by Dr. Schiff, are "great medical providers." Certainly he would allow that their medical treatments are accepted as the standard of care.

FURTHER AFFIANT SAYETH NOT.

*Patricia Hughes*

Date: <u>June 20th, 2018</u>

_____
Patricia Hughes