# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

PATRICIA HUGHES,
    *Plaintiff*,

v.

HARTFORD LIFE AND ACCIDENT
INSURANCE CO.,
    *Defendant*.

No. 3:17-cv-01561 (JAM)

## ORDER RE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

Plaintiff Patricia Hughes moves for an award of attorney's fees and costs. For the reasons explained below, I will grant Hughes's motion in part and will award $105,762.25 in attorney's fees and $3,576.54 in costs.

### BACKGROUND

Hughes brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against defendant Hartford Life and Accident Insurance Company ("Hartford Life") to challenge the termination of her disability benefits. I ruled in Hughes's favor, remanding the case on the ground that Hartford Life denied Hughes her right to a full and fair review when it refused to give her the opportunity to respond to an expert report that the company obtained while it was reviewing her appeal. *See Hughes v. Hartford Life and Accident Ins. Co.*, 368 F. Supp. 3d 386 (D. Conn. 2019). Following my order of remand, Hughes now moves for an award of attorney's fees and costs. *See* Doc. #74.

### DISCUSSION

Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Still, this discretion "is not unlimited."

1

*Donachie v. Liberty Life Assur. Co. of Boston*, 745 F.3d 41, 46 (2d Cir. 2014) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010)). The Supreme Court has held that an award of attorney's fees is appropriate only if the party seeking fees has obtained "some degree of success on the merits." *Ibid.* (quoting *Hardt*, 560 U.S. at 255). Indeed, "whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion." *Ibid.* In deciding whether to award fees, courts may also—but are not required to—consider the five "*Chambless* factors":

> (1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Ibid.* (quoting *Hardt*, 560 U.S. at 249 n.1); *see also Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987).

Hughes contends that my order of remand of her claim constitutes "some degree of success on the merits." In *Hardt*, the Supreme Court deemed a fee award appropriate where the district court had remanded a plaintiff's claim to the plan administrator and opined positively on the merits of her claim, and where the plaintiff was ultimately awarded benefits. 560 U.S. at 255-56. The *Hardt* Court explicitly declined to decide "whether a remand order, without more, constitutes 'some success on the merits.'" *Id.* at 256. Nor has the Second Circuit decided this question. Many other courts, however, have found "remand simpliciter" to constitute "some success on the merits." *See Valentine v. Aetna Life Ins. Co.*, 2016 WL 4544036, at *4-*5 (E.D.N.Y. 2016) (collecting cases and concluding "that 'remand simpliciter' is sufficient to constitute 'some success on the merits' under *Hardt* and that an endorsement from the Court on

the merits of the claim is unnecessary"); *see also Gross v. Sun Life Assurance Co. of Canada*, 763 F.3d 73, 77 (1st Cir. 2014); *McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537, 546-47 (6th Cir. 2011).

As I have previously ruled on this same issue when presented in another case, I am generally persuaded by the reasoning of the precedent cited above. *See Dwinnell v. Fed. Express Long Term Disability Plan*, 2017 WL 1371254, at *2 (D. Conn. 2017). That is not to say that I cannot imagine that some kinds of remands might be for highly technical or clerical reasons, such that the act of remand might not qualify as "some degree of success on the merits." But that is not the nature of the remand here. The remand here was to allow for a full and fair review of Hughes's claim that she did not receive in the first place. It is sufficient to constitute "some success on the merits" for Hughes.

I have also considered the five *Chambless* factors. With respect to the first factor (bad faith or culpability), I agree with Hartford Life that it did not act in bad faith. As I explained in my prior ruling, Hartford Life's action was in accord with an interpretation of the regulation that had been adopted by some federal appeals courts elsewhere in the nation. *See Hughes*, 368 F. Supp. 3d at 399 (citing decisions of the Eighth, Tenth, and Eleventh Circuits). But for this first factor, there is no requirement of a showing of bad faith; it is enough if Hartford Life nonetheless acted culpably in the sense that it breached a legal duty to plaintiff. *See Donachie*, 745 F.3d at 47. Hartford Life surely did so here by denying Hughes a full and fair review of her claim. And "[i]n this imperfect world, where human rather than angelic nature is at issue, an individual may be censured or blamed for conduct that is faulty, albeit undertaken in good (if mistaken) faith." *Benjamin v. Oxford Health Ins., Inc.*, 355 F. Supp. 3d 131, 139 (D. Conn. 2019).

As to the second *Chambless* factor (ability to pay), I think it is clear that Hartford Life is a sizeable corporate entity with plenty of resources to satisfy a fee award. This factor weighs in favor of a fee award.

As to the third *Chambless* factor (deterrence), it is neutral. Although Hartford Life breached a legal duty, it chose to act in accord with the law as interpreted by three federal courts of appeals outside the Second Circuit. Although I disagree with the views of those courts of appeals, I don't see a deterrence interest in penalizing a party for adhering to a legal position that finds substantial support in decisions of several federal courts of appeals.

As to the fourth factor (importance of issue), this factor weighs in favor of Hughes. The grounds for decision involved an important issue concerning the procedural review of ERISA claims prior to the more recent amendment of the regulation.

As to the fifth factor (relative merits of the parties' positions), this factor weighs mildly in Hughes's favor. I concluded that there was substantial merit to Hughes's claim that she was denied a full and fair review. I did not, however, rule on Hughes's additional claims of error.

All in all, I conclude that the *Chambless* factors weigh modestly in Hughes's favor and in support of an award of attorney's fees. I am "persuaded that awarding attorneys' fees in the circumstances presented furthers the policy interest in vindicating the rights secured by ERISA." *Donachie*, 745 F.3d at 47.

Now that brings me to whether the size of Hughes's attorney's fees request is reasonable. According to Hughes's revised request, Hughes seeks the following award: attorney's fees for $116,236 to the law firm Evans Warncke Robinson, $24,093 to the law firm Riemer & Associates, and costs in the amount of $3,576.54. *See* Doc. #80 at 10.

Because there is no challenge to the request for costs, I focus solely on the request for attorney's fees. I must determine a presumptively reasonable fee, based on a "lodestar" calculation of a reasonable hourly rate and the number of reasonably expended hours. *See, e.g.*, *Stanczyk v. City of New York*, 752 F.3d 273, 284-85 (2d Cir. 2014). I will also address Hartford Life's multiple objections to Hughes's request. I deem any other objection to be waived.

*Senior attorney billing rates*

First, Hartford Life objects to the billing rates used by several of Hughes's counsel. *See* Doc. #79 at 14-17. Hughes seeks attorney's fees for three different attorneys, all of whom are based in states outside of Connecticut, at hourly rates between $525 to $575. Attorney Jeffrey Warncke of the law firm Evans Warncke Robinson is based in Atlanta, Georgia; Attorney Paul Kampfer of the law firm Riemer & Associates is in New York City; and Attorney Scott Wilson (a contract attorney retained for brief writing by Attorney Warncke) is based in Chattanooga, Tennessee. The Second Circuit has endorsed the "forum rule" which provides that courts should generally use the hourly rates employed by counsel in the district in which the reviewing court sits in calculating a reasonable fee, absent evidence that a reasonable, paying client would have paid higher out-of-district rates and absent evidence of special factors warranting a choice of out-of-district counsel. *See Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017).

Counsel here took Hughes's case on a contingency basis, and I am not convinced that Hughes would have agreed to pay rates higher than $500 per hour as requested for Attorneys Warncke, Kampfer, and Wilson. Nor is it clear to me that counsel's out-of-district location afforded any special advantages. Accordingly, I will apply the rates that are reasonable for Connecticut counsel of comparable experience. I conclude for the reasons stated by Hartford Life that a reasonable rate for the three partners who worked on this case is $425 per hour. *Cf.*

5

*Benjamin*, 355 F. Supp. 3d at 144 (awarding as reasonable in Connecticut rate of $425 per hour for partner with 21 years of ERISA litigation experience, down from requested $700 per hour). This capped rate shall also apply to the limited billings for Attorney Jennifer Hess of the Riemer & Associates firm.

### *Out-of-state travel time by out-of-state counsel*

Hartford Life objects to the inclusion of fees and costs for travel time for out-of-state counsel. *See* Doc. #79 at 17. "Defendants should not be burdened with the costs of funding out-of-district counsel unless the case requires specialized expertise beyond the competence of local counsel." *Pasini v. Godiva Chocolatier, Inc.*, 764 F. App'x 94, 96 (2d Cir. 2019). The billing sheet shows the following billings for Attorney Warncke relating to his travel to and from Georgia to Connecticut for oral argument on the parties' cross-motions for summary judgment. For October 28, 2018, it reflects 6.2 hours for "Travel home to airport, flight to White Plains, drive to New Haven." Doc. #74-3 at 3.[1] For October 29, 2018, it reflects 8.2 hours for "Final hearing prep and rehearsal in hotel. Attend bench trial hearing; drive from New Haven to White Plains." *Ibid.* For October 30, 2018, it reflects 7 hours for "Travel hotel to White Plains airport, White Plaints ATL, ATL airport to office." *Ibid.* Notwithstanding Attorney Warncke's claim that he was working on this case during his travel from Atlanta to Connecticut, the billing entries do not so reflect. Accordingly, I will deduct 12.2 hours—the hours reflected for October 28 (except one hour for travel from White Plains to New Haven) and October 30—as non-compensable out-of-district travel time.

---

[1] I take judicial notice that White Plains airport is located in New York but very near the border of Connecticut. I solely intend to exclude out-of-district travel time by out-of-district counsel and do not exclude time traveling from White Plains on the Connecticut border to New Haven.

Attorney Kampfer's time sheet reflects an entry for 7 hours on October 29, 2018, for "Finished preparation for bench trial. Meeting with Jeff Warncke re: same. Attend bench trial with Jeff Warncke (incl. travel time)." Doc. #74-4 at 5. I will deduct 1.5 hours from Attorney Kampfer's time corresponding to a fair estimate of his round-trip out-of-district travel time from New York City to the Connecticut border en route to New Haven.

*** Attorney Kampfer ***

Hartford Life objects to fees for Attorney Kampfer who allegedly served as "local" counsel in this action and who attended but did not present argument at the hearing on the parties' summary judgment motions. *See* Doc. #79 at 17-18. In view that Attorney Kampfer's law firm (Riemer & Associates) sponsored Attorney Warncke's *pro hac vice* admission to the District of Connecticut and in view of docket entries showing Kampfer's active participation in the litigation principally in the nature of a local counsel role, *see* Doc. #74-4 (entries for "PMK"), I conclude that it is appropriate for Kampfer's fees to be included. The fact that Attorney Kampfer's firm is located in New York City does not signify that Attorney Kampfer's services were not appropriate or necessary. On the other hand, in view that Attorney Kampfer did not present argument at the summary judgment hearing, I will deduct 3.3 hours that correspond to his entry on October 26, 2018, for "Review of file/motion papers re: preparation for oral arguments," as not adequately substantiated and not reasonably necessary. The hours spent by Attorney Kampfer assisting Attorney Warncke on the day of argument I find to be reasonably necessary.

*** Attorney Wilson ***

Hartford Life objects to fees for Attorney Wilson who was retained on a contract basis by Attorney Warncke to prepare summary judgment briefing. *See* Doc. #79 at 18-19. I conclude on

7

the basis of the submissions that Attorney Wilson's services were reasonably necessary, and I do not agree with Hartford Life's argument that they are not compensable on the ground that there was no direct attorney-client relationship between Attorney Wilson and Hughes. Apart from a correction to one double-billing entry that has been incorporated into the revised fee request, Hartford Life has not shown that Attorney Wilson engaged in services that needlessly duplicated the efforts of other counsel.

### *Paralegal billing*

Hartford Life objects to 0.9 hours billed by a paralegal for downloading a motion for extension of time and for reviewing a one-line order by the Court granting the motion. *See* Doc. #79 at 19. I agree that these entries are highly suspect, *see* Doc. #74-3 at 1, and therefore I will deduct the 0.9 hours from the attorney's fee request.

### *Supplemental billing submission*

Hughes has submitted a supplemental billing submission to account for fees incurred to prepare reply briefing for the attorney's fee application. *See* Doc. #80-2. Because I conclude that many of Hartford Life's objections to the fee application have merit, I decline to award fees for this supplemental application on the ground that it would be inequitable for Hartford Life to have to pay fees that resulted from its well-founded objections to Hughes's own errors (such as double-billing and other unjustified entries).

### *Calculation*

On the basis of the billing submissions, Docs. #74-3, #74-4, and the discussion above, I calculate the attorney's fees as follows:

8

| Name | Hours | Rate | Subtotal |
|---|---|---|---|
| Jeffrey Warncke | 94.3 | $425 | $40,077.50 |
| Scott Wilson | 68.3 | $425 | $29,027.50 |
| Paul Kampfer | 37.9 | $425 | $16,107.50 |
| Jennifer Hess | 1.35 | $425 | $573.75 |
| Steven Mitchell | 52.4 | $250 | $13,100.00 |
| Pamela Cassagnol | 39 | Variable | $6,135.00 |
| Doug Naville | 11.6 | Variable | $741.00 |
| Total Fee Award | | | $105,762.25 |

The Court therefore awards Hughes attorney's fees in the amount of $105,762.25.[2]

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Hughes's motion for attorney's fees and costs, Doc. #74, in the amount of $105,762.25 in attorney's fees and $3,576.54 in costs to be paid to Hughes's counsel by Hartford Life no later than **February 26, 2020**.

It is so ordered.

Dated at New Haven this 5th day of February 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[2] A rate is "variable" if the rate varied over time or if certain hours were not billed. Counsel may contact chambers if they wish to receive a copy of the Excel spreadsheet used to make the calculation set forth in the ruling. If the parties find error with the Court's calculation, they may file a motion to amend this order by February 14, 2020.